# PHYSICIAN EMPLOYMENT AGREEMENT

**THIS PHYSICIAN EMPLOYMENT AGREEMENT** ("**Agreement**"), made and executed at Norton, Kansas, on the 16th day of August, 2019 ("**Effective Date**"), by and between **NORTON COUNTY HOSPITAL**, a county hospital organized under the laws of the State of Kansas ("**Hospital**"), and **JOSHUA GAEDE, M.D. ("Physician")**.

## WITNESSETH:

**WHEREAS**, Hospital has as one of its purposes the development and enhancement of the medical care available to the residents of Norton County and the surrounding area (the "**Service Area**"); and

**WHEREAS**, the Board of Trustees of Hospital has determined that Physician's practice of medicine as an employee of Hospital is consistent with and furthers Hospital's mission, purpose, and objectives, provided Physician is properly licensed to practice medicine in the State of Kansas and is eligible for membership on the Active Medical Staff of Hospital;

**WHEREAS**, Physician desires to practice medicine and provide physician services for patients of Hospital on the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained herein, it is understood and agreed by and between the parties hereto as follows:

## ARTICLE 1
## Terms of Employment

1.1     **Conditional Offer**. Hospital hereby agrees to employ Physician, and Physician hereby accepts such employment as a physician specializing in Family Practice/Obstetrics with C-section. Notwithstanding anything to the contrary contained herein, this Agreement shall be deemed to constitute only a conditional offer of employment, and shall not be binding upon Hospital until Physician (a) has passed any pre-employment medical examinations and/or drug screening required by Hospital; (b) has obtained an unrestricted license to practice medicine in Kansas; and (c) has been approved for membership on the Active Medical Staff of Hospital and awarded clinical privileges appropriate for a physician specializing in Family Practice/Obstetrics with C-section. The services to be provided by Physician include such professional and administrative services as are hereinafter set forth. In the performance of administrative tasks, Physician shall be accountable to the Hospital's Chief Executive Officer.

1.2     **Agreement Controls**. Physician is a highly compensated employee of Hospital. As such, Physician's rights, duties, and responsibilities as an employee are governed solely by the terms of this Agreement. Any conflict between this Agreement and any employee manual or Hospital policies which may be in existence for the employees of Hospital shall be governed by the terms of this Agreement. All patients for whom Physician provides physician services during the term of this Agreement shall be patients of Hospital. The terms of this Agreement may be amended by written agreement signed by the parties.

1

OP 1854147.5

1.3    **Term of Agreement.**  The term of this Agreement shall commence on or before September 1, 2020 ("**Commencement Date**"), and extend for a period of four (4) years, and shall renew automatically for successive one (1)-year terms on the same terms and conditions, unless terminated as otherwise provided herein.

## ARTICLE 2
## Medical Staff Appointment and Clinical Privileges

Physician shall maintain Active Medical Staff appointment and clinical privileges at Hospital as required for the performance of the professional services contemplated by this Agreement. Physician shall satisfy all prerequisites for initial appointment and reappointment to the Medical Staff; attend and participate in Medical Staff meetings; complete and maintain records relating to Medical Staff membership; assist, if requested to do so, in staff recruitment programs; and adhere to all Medical Staff Bylaws and Rules and Regulations.

## ARTICLE 3
## Physician's Obligations

3.1    **Base Service Obligations and Schedule.**  Physician shall devote Physician's full working time and best efforts to practicing medicine pursuant to this Agreement.  Hospital recognizes Physician may, and is encouraged to, engage in civic and charitable activities so long as such devotion of time and energy does not interfere with Physician's obligations under this Agreement.  Specifically, Physician shall:

(a)    Provide scheduled Family Practice/OB with C-section patient care services at least four (4) days per week with a minimum of thirty-six (36) patient contact hours per week, unless otherwise directed by Hospital;

(b)    Perform related administrative duties including, but not limited to, completion of medical record and related documentation, supervision of up to three (3) full-time equivalent mid-level practitioners, and activities relating to development and promotion of Physician's medical practice and Hospital's family practice and obstetrics programs;

(c)    Perform such administrative duties (e.g., medical director, education, outreach), if any, as agreed to and described in Schedule 3.1(c).  Physician shall maintain complete and accurate records of any such duties performed and time spent fulfilling such duties in such form as reasonably required by Hospital;

(d)    Provide call coverage on weekends, evenings, nights, and holidays for those patients under Physician's care and treatment, and coordinate appropriate coverage of patients in Physician's absence and serve on the Emergency Room admitting rotation schedule as a part of Physician's Active Medical Staff obligations within Physician's specialty.

OP 1854147.5

3.2   **Scheduling.**

(a)   Physician shall perform the services described in Section 3.1 in accordance with schedules developed by Hospital in cooperation with all Hospital providers and Hospital policies and procedures.

(b)   Hospital expects that Physician's responsibility for primary weekday emergency room call coverage will average one (1) out of every five (5) nights during the first year of this Agreement. Hospital shall use its best efforts to secure mid-level providers to act as primary weekday emergency room coverage. Hospital shall retain locum tenens physicians as necessary to ensure that Physician's primary weekday emergency room call coverage responsibilities do not exceed roughly one (1) out of every five (5) nights for any thirty (30)-day period. If the Hospital cannot retain locum tenens coverage as described above after using its best efforts to do so, Hospital shall pay Physician for such excess weekday call coverage at *One Hundred Dollars* ($100.00) per hour (*One Hundred Fifteen Dollars* ($115.00) per hour for holidays (New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day)).

(c)   Hospital expects that Physician's responsibility for primary weekend emergency room call coverage will average one out (1) of every four (4) weekends during the first year of this Agreement. Hospital shall use its best efforts to secure mid-level providers to act as primary emergency room coverage during weekends. Hospital shall retain locum tenens physicians as necessary to ensure that Physician's primary weekend emergency room call coverage responsibilities do not exceed one (1) out of any four (4) weekends for any four (4)-week period. If the Hospital cannot retain locum tenens coverage as described above after using its best efforts to do so, Hospital shall pay Physician for such excess weekend call coverage at *One Hundred Dollars* ($100.00) per hour (*One Hundred Fifteen Dollars* ($115.00) per hour for holidays (New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day)).

3.3   **Provision of Services**. Physician shall provide indigent care and charitable services consistent with Hospital's mission, purpose, and objectives. Physician shall provide physician services in a non-discriminating manner without regard to the race, color, creed, religion, national origin, age, sex, sexual preference, disability, or marital status of the patient being treated.

3.4   **Other Business**. During employment, Physician will not engage in any other business or medical practice activity, regardless of whether such activity is pursued for pecuniary advantage, without the prior written consent of Hospital, which consent shall not be unreasonably withheld by Hospital.

3.5   **Conditions Precedent.** As a condition of employment, Physician shall hold: (i) an unrestricted license to practice medicine in the State of Kansas; (ii) all customary narcotics and controlled substances numbers and licenses as required by federal, state, or local laws and regulations to dispense and prescribe pharmaceuticals and controlled substances; and (iii) Medical Staff appointment and privileges at Hospital necessary to perform the services appropriate to Physician's field of practice. Physician understands and agrees that Physician's

OP 1854147.5

employment will not commence, and Physician will not be compensated hereunder, until the conditions set forth in the preceding sentence have been fully satisfied. Physician shall provide and perform all professional medical services hereunder in accordance with the prevailing professional standards at the time such services are rendered and in accordance with the currently approved methods and practices of the State Board of Healing Arts, Hospital, and its Medical Staff. Physician shall maintain Physician's professional standing and shall not engage in any conduct that would jeopardize the health or safety of patients. Physician shall keep Hospital fully informed of any situation that might jeopardize Physician's professional standing. Physician shall use good-faith efforts to become board certified and/or maintain Physician's board certification in Physician's field of practice.

3.6 **Medical Records.** Physician shall prepare in a timely manner complete and accurate medical and other records with respect to the services and treatment rendered to any patient pursuant to this Agreement (**"Medical Records"**) in compliance with Hospital's established policies and procedures, applicable state and federal law, and applicable accreditation standards. The Medical Records shall include all information necessary for Hospital to bill and collect for the services and treatment (**"Billing Information"**). To the fullest extent possible, Physician shall use Hospital's health information technology (including, but not limited to, electronic health records and health information exchanges) in generating, maintaining, and accessing such records. Failure to complete Medical Records in a timely manner (but not more than fourteen (14) days from the date of service), after receiving a written reminder to do so from Hospital, may result in the withholding of future compensation until such records are completed or termination of this Agreement by Hospital. If Physician's failure to timely provide complete and accurate Medical Records (including Billing Information) results in denial, refund, or recoupment of payment for the service, Hospital may reduce Physician's compensation by the amount of the denial, refund, or recoupment. All Medical Records shall be maintained on Hospital property and shall be the exclusive property of Hospital. Physician covenants and agrees to maintain the confidentiality of Medical Records in compliance with applicable state and federal laws and regulations and Hospital policies and procedures. Hospital shall make available to Physician, at no cost, copies of all Medical Records with respect to the services and treatment rendered by Physician which may be needed for purposes of peer review or licensing board investigations, Board Certification requirements, or in anticipation of litigation or trial; this requirement shall continue after termination of this Agreement. Upon the termination of this Agreement by either party, with or without cause, Hospital shall deliver to Physician, upon Physician's written request accompanied by an appropriate authorization signed by the applicable patient or patient representative, a copy of such patient's Medical Record. Physician shall pay Hospital a reasonable copying charge for each such patient Medical Record, which the parties agree is a reasonable estimate of Hospital's actual cost to copy such records.

3.7 **Time Records.** If required by and to the extent requested by Hospital, Physician shall prepare and maintain time records in accordance with Hospital procedures for physician time records. Physician agrees to maintain such records as may be required by Medicare regulations and the Medicare Administrative Contractor, Medicaid program, or other third-party insurance programs. Physician shall prepare and file such additional or supplementary reports as Hospital may reasonably request and be prepared to analyze and interpret such reports upon the request of Hospital.

OP 1854147 5

3.8    **Third-Party Payers**.  Hospital shall enroll Physician with Physician's assistance in such health maintenance organizations, preferred provider organizations, independent practice associations, and other managed care arrangements as Hospital may from time to time designate. Physician may not become a participating provider in any third-party reimbursement program without the express written consent of Hospital (other than as may be related to other business that is allowed pursuant to Section 3.4 above).  Physician may not terminate participation in any third-party reimbursement program or terminate any assignment of benefits or payment from such programs to Hospital without the express written consent of Hospital.  Physician shall cooperate with Hospital in Hospital's managed care contracting activities.

3.9    **Payer Eligibility**.  Physician represents and warrants that Physician is fully qualified to participate in Medicare, Medicaid, TRICARE, and all other federal, state, and local governmental programs for the reimbursement of health care services provided by Physician, and Physician is not now excluded from participation in any such program.  Physician further represents and warrants that Physician either has not been excluded from any such program in the past or, if previously excluded, that Physician has been fully reinstated and has provided to Hospital written evidence showing such reinstatement and information describing the reasons for the prior exclusion.

3.10    **Notification of Sanctions**.  Physician immediately shall notify Hospital of the receipt of an initial sanction notice, notice of proposed sanction, or the commencement of formal investigation or the filing of charges by a quality improvement organization, including, but not limited to, the state quality improvement organization, the U.S. Department of Health and Human Services, or any law enforcement agency of the United States or State of Kansas.

3.11    **Disclaimer Regarding Treatment**.  Nothing contained herein shall be construed as requiring Physician to make referrals to, or otherwise generate business for, Hospital; provided, however, as necessary to effectuate the legitimate business purposes of this Agreement, with respect to inpatient and outpatient services related to Physician's services under this Agreement, Physician shall refer patients to a Hospital facility for such services unless (1) the patient expresses a preference for a different provider, practitioner or supplier, (2) the patient's insurer determines the provider, practitioner, or supplier; or (3) Physician determines in Physician's medical judgment that the referral to the Hospital facility is not in the patient's best medical interests.  This referral requirement shall not apply to any services not provided by Physician under the scope of Physician's employment. If Physician refers a patient for services to a non-Hospital facility, Physician shall document in the record the reason for such referral.

3.12    **Compliance Program**.  Physician shall adhere to Hospital's Code of Conduct and shall actively participate in Hospital's Corporate Compliance Program.

3.13    **Accreditation Standards**. Physician shall adhere to all rules and regulations of Hospital's accrediting agencies.

3.14    **Payer Policies**. Physician shall adhere to all applicable rules and regulations of Medicare, Medicaid, CHAMPUS, TRICARE, and all other federally funded health care programs.

5

OP 1854147.5

3.15 **Internal Policies**. Physician agrees to cooperate with Hospital's physician practice management and clinical personnel to achieve Hospital's goals including, but not limited to, maximizing practice revenues; minimizing practice costs; participating in interdisciplinary team meetings; maintaining or achieving such accreditation by such deeming organization(s) as Hospital determines appropriate; maintaining a high level of customer service and satisfaction including employees and other physicians; timely and accurate completion of both clinic and Hospital medical records and other necessary documentation; and continuously striving to improve the provision of quality medical care to patients.

3.16 **Malpractice Notification**. Physician agrees to keep Hospital advised of the status of all medical malpractice actions threatened or pending against Physician during the Term of this Agreement. Physician agrees that Physician's attorney or insurance company may communicate directly with Hospital and/or Hospital's attorneys or insurance company with respect to the status of any such threatened or pending medical malpractice action.

3.17 **Outreach**. Physician may be requested to promote the interests of Hospital by way of entertainment or otherwise and agrees to do so as permitted by the canons of professional ethics and Physician's moral and personal judgment and within the limits of law.

3.18 **Expenses**. Except for the benefits granted Physician as specified herein, it shall be Physician's responsibility to pay expenses for his personal automobile and other personal expenses as required to properly carry out the terms and conditions of this Agreement.

3.19 **Other Duties and Responsibilities**. Physician shall perform such other duties and responsibilities as reasonably may be required of Physician by Hospital to accomplish the purposes of this Agreement in providing physician services to the residents of the Service Area.

## ARTICLE 4
## Hospital's Obligations

4.1 **Space, Equipment, Furnishings, and Staffing**. Hospital shall provide the space, including an office, and the equipment and furnishings reasonably necessary, as determined by Hospital after consultation with Physician, to facilitate the performance by Physician of Physician's obligations pursuant to this Agreement. Hospital shall maintain such furnishings and equipment in good order and repair. Hospital shall also provide such services and supplies as are customarily required for the proper operation and conduct of Physician's office as determined by Hospital after consultation with Physician. Hospital shall also provide housekeeping, waste collection, and maintenance services for Physician's office. Hospital shall furnish Physician with such personnel as Hospital deems to be reasonably necessary for the performance of Physician's duties hereunder, taking into consideration the volume of patients in the practice, overall profitability, and enhancements to patient care.

4.2 **Billing and Collection**. Hospital shall provide or arrange for all necessary billing and collecting for all patient services provided by Physician pursuant to this Agreement. Physician shall execute such billing forms, records, or other required information within three (3) calendar days of the provision of services, including, without limitation, assignments as may be required to facilitate such billing of third-party reimbursement. Physician shall promptly remit to

OP 1854147.5

Hospital any amount received by Physician for services provided pursuant to this Agreement. Except for payments accruing to Physician as a result of outside activities in which Physician is permitted to engage with Hospital's consent pursuant to Section 3.4, Physician agrees that all work in process, accounts receivable, and revenues attributable to medical or professional services provided by Physician, regardless of place of service, during the Term of this Agreement shall belong to Hospital, and Physician agrees to cooperate with Hospital as necessary to facilitate the collection of the receivables of Hospital. Physician shall not directly or indirectly bill any party for any services provided pursuant to this Agreement. Physician shall indemnify Hospital for any loss or damage arising out of Physician's failure to comply with this billing prohibition or any state or federal regulations.

**ARTICLE 5**
**Compensation**

5.1    **Compensation Formula**.  In consideration for Physician's performance of the duties and responsibilities set forth in this Agreement, Hospital shall compensate Physician according to the terms set forth in **Exhibit A** attached hereto and incorporated herein.  Such compensation terms may be changed only by agreement of the parties, which agreement is set out in writing before the furnishing of items or services for which the compensation is to be paid. Such compensation shall be payable in accordance with Hospital's payroll policies, as amended from time to time, and such payments shall reflect all withholding by Hospital as required by federal and state tax laws and Social Security and Medicare tax withholding as required by law. Compensation shall be computed by Hospital pursuant to standard accounting practices, and shall be final and binding on Physician absent manifest error.  Compensation paid to the Physician pursuant to this Agreement is determined at fair market value and is not in any way contingent upon the volume of referrals or value of any admissions that may be made by Physician to Hospital.  Physician's position is classified as salaried-exempt, and Physician shall not be entitled to overtime pay or other salary adjustments except as expressly provided in this Agreement.

5.2    **Compensation Limits.**  Physician's annual Total Compensation shall not exceed the ninetieth (90th) percentile for Physician's specialty as determined by the most current Medical Group Management Association's *Annual Physician Compensation and Production Survey for the Southern Region* or equivalent nationally recognized physician compensation and production survey identified by Hospital.  Total Compensation includes (a) any amount Hospital is required to report as Physician's income for federal income tax purposes, and (b) all voluntary salary reductions (*e.g.*, contributions to 401(k), 403(b), Section 125 Tax Savings Plan).  Total Compensation shall not include (a) the dollar value of expense reimbursements or fringe benefits paid by Hospital (*e.g.*, retirement or pension plan contributions, life and health insurance, malpractice insurance), or (b) the amount of any fair market value loan made to Physician by Hospital (although any loan payment (including interest) owed by Physician which is forgiven by Hospital shall qualify as income at the time the amount is forgiven).

5.3    **Benefits.**  In addition to compensation as set forth in this Article 5, and except as otherwise provided in **Exhibit B** hereto, Physician shall be eligible for standard employee benefits provided to Hospital physician employees ("**Benefits Policy**") as applicable to Physician's specialty.  The Benefits Policy may be amended from time to time, at Hospital's

7

discretion, so long as the amendments apply equally to all similarly-situated employed physicians (or, with respect to specialty-specific benefits, apply equally to all similarly-situated physicians in Physician's specialty).

## ARTICLE 6
## Termination

6.1    **Termination for Justifiable Cause.**  Hospital may terminate this Agreement immediately with Justifiable Cause.  For the purposes hereof, **"Justifiable Cause"** shall mean only the following:

(a)    Revocation, termination, or suspension of Physician's license to practice medicine in the State of Kansas or Physician's narcotics registration; revocation, termination, or suspension of Physician's medical staff membership or staff privileges at Hospital; or sanction, debarment, suspension, or exclusion from the Medicare/Medicaid program or any other federal health care program.

(b)    Hospital's determination in good faith, and upon investigation, review, and consultation with the Medical Staff in accordance with its peer review policies as implemented through the Medical Staff Bylaws, that Physician is not providing adequate patient care or that the safety of patients is jeopardized by continuing the employment of Physician.

(c)    The failure of Physician to maintain levels of productivity Physician has historically performed as a Physician of Hospital so long as Physician has been given prior notice of deficiency and been given a reasonable opportunity to correct.

(d)    Physician being found guilty of, or pleading guilty or *nolo contendere* to, a felony.

(e)    Medically confirmed chronic alcohol or drug abuse by Physician.

(f)    The permanent disability of Physician which prevents Physician from performing the essential functions of Physician's specialty or the inability of Physician, by reason of illness or other cause, to perform full and comprehensive services in Physician's field of practice for a period of twelve (12) or more consecutive weeks commencing at the onset of such illness or condition as determined by two (2) independent consultants with appropriate medical backgrounds.  One of the independent consultants shall be chosen by Hospital and the other shall be chosen by Physician.  The collective opinion of such consultants shall be final and binding on the parties.  If such consultants cannot reach agreement, they shall mutually agree on a third consultant, and the opinion of such third consultant shall be final and binding on the parties.  Each party shall pay expenses associated with retaining the party's own independent consultant and, if applicable, the parties shall equally split the expenses associated with a third consultant.

OP 1854147.5

(g)    Neglect of duty or violation of the Medical Staff Bylaws or any other bylaws, rules, regulations, or policies of Hospital, which neglect of duty or violation is not corrected by Physician within ten (10) business days after written notice describing the neglect or violation is given to Physician by Hospital.

(h)    Conduct by Physician which demonstrates Physician's refusal or inability to work with and/or relate to patients, other medical staff members, members of other health disciplines, Hospital administration and employees, or the Board in a cooperative, professional manner that is essential for maintaining an environment appropriate to quality and efficient patient care, if such conduct is not corrected by Physician within ten (10) business days after written notice describing such conduct in detail is given to Physician by Hospital.

(i)    The death of Physician.

(j)    If Hospital determines that Physician is or has ever been convicted of a felony by a court of law.

(k)    If it is determined that Physician has had previous medical malpractice claims or has pending claims that were not disclosed to the Hospital prior to the time Physician commenced employment with the Hospital or arose during Physician's term of employment at the Hospital.

(l)    If Physician engages in competition with the Hospital in any manner without the express prior written consent of the Hospital or has breached any of Physician's agreements with Hospital.

(m)    If Physician otherwise is in material breach of this Agreement after being provided with written notice of such material breach and fails to cure such material breach within ten (10) business days after receiving such written notice.

(n)    As provided for by any other section of this Agreement.

Physician shall be entitled to all rights under the Americans With Disabilities Act of 1990 ("**ADA**") in the event of termination for cause under the provisions of Sections 6.1(e) and 6.1(f) above.

6.2    **Termination by Physician for Cause.** If Hospital materially breaches any of the terms of this Agreement or if Hospital shall cease providing obstetrics services, Physician shall notify Hospital in writing specifying the breach and setting forth a ten (10) business day Cure Period. If Hospital fails to cure the breach during the Cure Period, Physician, in Physician's sole discretion, may terminate the Agreement immediately without further notice upon the expiration of the Cure Period. Notwithstanding the foregoing, if a breach is cured within the Cure Period but the same or substantially similar breach occurs within a six (6) month period following expiration of the Cure Period, then Physician may immediately terminate this Agreement without any further opportunity for cure being afforded.

OP 1854147.5

6.3 **Termination Without Cause.**   Either party may terminate Physician's employment at any time for any reason or no reason, with or without cause, upon ninety (90) days' written notice to the other party.  The Hospital may, in Hospital's sole discretion, elect to give Physician ninety (90) days' pay and benefits in lieu of notice, provided that the Hospital arranges for coverage of Physician's patients so as to avoid patient abandonment.  Such pay and benefits shall be equal to the average monthly compensation received by Physician hereunder during the preceding twelve (12) full calendar months, or, if Physician has been employed less than twelve (12) calendar months, the monthly Base Compensation received by Physician hereunder during the Term of this Agreement, along with all benefits that would otherwise accrue to Physician during the period of his employment, including professional liability insurance.

6.4 **Notification to Patients**.  Upon the termination of this Agreement for any reason, Hospital may send a letter to patients who were treated by Physician during Physician's employment hereunder notifying such patients of Physician's termination of employment. Physician shall not notify Physician's patients of such termination of employment in any manner without the prior written approval by Hospital of the form of communication to be sent by Physician to such patients.

### ARTICLE 7
### Indemnification

Except as specifically identified herein, it is understood and agreed that each of the parties hereto shall be responsible for their own acts and omissions and neither of the parties agrees to indemnify the other party for any such act or omission.  This Agreement shall not constitute a waiver by either party of any rights to indemnification, contribution, or subrogation which such party may have by operation of law.

### ARTICLE 8
### General Conditions

8.1 **Notice.**  Any notice required or permitted to be given to either party under this Agreement shall be sufficient if in writing and sent by certified mail, return receipt requested to:

| | |
|---|---|
| If to Physician: | Joshua Gaede, M.D. |
| | (at his current address then on file with Hospital) |
| If to Hospital: | Chief Executive Officer |
| | Norton County Hospital |
| | 102 E. Holme St. |
| | Norton, KS 67654 |
| With a copy to: | John F. McClymont, Esq. |
| | McClymont Law Office, PA |
| | 102 S. State Street, P.O. Box 364 |
| | Norton, KS 67654-0364 |

OP 1854147.5

Either party may from time to time change said address or designation by written notice to the other party given as above. Notices shall be deemed to have been received when hand-delivered to the recipient, or three (3) business days after being mailed, postage prepaid, in the manner described above.

8.2     **Enforceability**.  If any clause or provision herein shall be judged invalid or unenforceable by a court of competent jurisdiction or by operation of any applicable law, it shall not affect the validity of any other clause or provision, but shall remain in full force and effect. The District Court of Norton County, Kansas, shall have jurisdiction over any dispute which arises under this Agreement, and each of the parties shall submit and hereby consents to such court's exercise in jurisdiction.   Each provision of this Agreement shall be enforceable independently of any other provision of the contract and independent of any other claim or cause of action.  In the event of any dispute arising under this Agreement, it is agreed between the parties that the laws of the State of Kansas will govern the interpretation, validity, and effect of this Agreement without regard to the place of execution or place of performance thereof.

8.3     **Waiver**.  The failure of either Physician or Hospital at any time to require the performance of the other of any of the provisions herein shall in no way affect the respective rights of the Physician or the Hospital to enforce the same, nor shall the waiver by the Physician or the Hospital of any breach of any provisions hereof be construed to be a waiver of any succeeding breach or as a waiver or modification of the provisions.

8.4     **Injunctive Relief**.  In the event of the breach or threatened breach of any provision of this Agreement, the non-breaching party shall be entitled to injunctions, both preliminary and final, enjoining and restraining such breach or threatened breach.  Such remedies shall be in addition to all other remedies available at law or in equity, including the non-breaching party's right to recover from the breaching party any and all immediate and direct damages as may be sustained as a result of breaching party's breach of contract and any profits the breaching party may have obtained in violation of this Agreement.  The non-breaching party shall be entitled to recover its attorney's fees and expenses in any successful action to enforce this Agreement.

8.5     **Confidential Information**. Physician acknowledges that, in connection with this Agreement and the services provided by Physician pursuant to this Agreement, Physician will be acquiring and making use of confidential information and trade secrets (the "**Confidential Information**") of Hospital which include, but are not limited to, this Agreement, Protected Health Information regarding patients as defined by HIPAA, management reports, marketing studies, marketing plans, financial statements, internal memoranda, reports, patient lists, and other materials or records of a proprietary nature.  Therefore, in order to protect the Confidential Information, Physician will not after the date hereof, and for so long as any such Confidential Information may remain confidential, secret, or otherwise wholly or partially protectable, use such information except in connection with the performance of Physician's duties pursuant to this Agreement or divulge the Confidential Information to any third party, unless Hospital consents in writing to such use or divulgence or if required by law.  Hospital shall have the right, at its option, to enforce the provisions of this confidentiality covenant by means of injunctive relief in addition to any other remedies that may be available under law.  Physician hereby waives the claim or defense that an adequate remedy at law for such a breach exists.  The

11

covenants contained in this Section 8.5 will survive any termination of this Agreement. This covenant is not meant to interfere with the physician/patient relationship or preclude Physician from fulfilling the ethical and professional obligations to Physician's patients.

8.6    **Non-Competition**. The parties acknowledge that Physician is receiving substantial benefit from the Agreement. Furthermore, it is recognized that Physician may terminate this Agreement without cause, as provided in Article 6. If this Agreement is terminated for any reason other than by Physician without cause, Physician shall not be subject to any non-competition agreement. Upon termination of this Agreement by Physician without cause, then for a period of two (2) years Physician shall not provide the services provided by Physician herein in affiliation with another hospital, health maintenance organization, preferred provider organization, independent practice association, or integrated health care delivery system not affiliated with Hospital (collectively **"Other Health Care Entities"**) within sixty (60) miles' driving distance from Hospital's facility where Physician performed at least Fifty Percent (50%) of his services as measured by Work RVUs performed during the six (6) months prior to the termination of this Agreement, without the prior written consent of the Board of Trustees of Hospital; provided, however, that Indian Health and Tribal Services are specifically excluded from Other Health Care Facilities. Nothing in this section shall be construed to restrict the ability of Physician to refer patients to other health care facilities or providers, if, in Physician's professional medical judgment, such referral is required for patient care reasons or upon patient request. This provision notwithstanding, Physician is not prohibited from providing physician services in affiliation with any other individual or group practice within sixty (60) miles' driving distance from Hospital's facility that is not within the definition of Other Health Care Entities.

8.7    **Assignment**. The benefit of this Agreement may not be assigned except by Hospital to a subsidiary or successor corporation, and even if so assigned by Hospital, Physician shall not be required to render services beyond those required by this Agreement to the residents of the Service Area.

8.8    **Changes in Law**. The parties recognize that this Agreement at all times is to be subject to the applicable state, local, and federal law, all public and safety provisions of state law and regulations, and the rules and regulations of any peer review organization or activity. The parties further recognize that the Agreement shall be subject to amendments in such laws and regulations and to new legislation such as a new federal or state economic stabilization program or health insurance program. Any provisions of law that invalidate, or otherwise are inconsistent with, the terms of this Agreement or would cause one or both of the parties to be in violation of the law, shall be deemed to have superseded the terms of this Agreement, provided, however, that the parties shall exercise their best efforts to accommodate the terms and intent of this Agreement to the greatest extent possible consistent with the requirements of the law.

8.9    **Records**. The parties hereby agree to make available for a period of four (4) years after furnishing of services under this Agreement, upon written request of the Secretary of the U.S. Department of Health and Human Services, or upon request of the Comptroller General, or any of their duly authorized representatives, this Agreement, and any of the parties' books, documents, and records that are necessary to certify the nature and extent of costs incurred by Hospital pursuant to this Agreement. Further, if the parties carry out any of their duties under

12

OP 1854147.5

this Agreement through subcontract with a value and cost of Ten Thousand Dollars ($10,000.00) or more over a twelve (12)-month period with a related organization, such contract must contain a clause to the effect that the related organization shall furnish its books, documents, and records upon request as described above to verify the nature and extent of this cost.

8.10    **Successors and Assigns**.    Subject to the provisions of Section 8.7, this Agreement shall inure to the benefit of and be binding upon Hospital, its successors, and assigns, including, without limitation, any corporation which may acquire all or substantially all of Hospital's assets and business or to which the Hospital may be consolidated or merged; and upon Physician, his heirs, executors, administrators, and legal representatives.

8.11    **Approval**.  This Agreement is contingent upon approval by the Board of Trustees of Hospital which shall be evidenced by the certification by the Secretary of said Board below.

8.12    **Regulatory Compliance**.  Notwithstanding any unanticipated effect of any of the provisions herein, no party intends to violate the federal Medicare and Medicaid Anti-Kickback Statute and/or the federal Physician Self-Referral Statute, as such provisions are amended from time to time.    The parties intend that this Agreement meet the requirements of:  (a) the employment exception to the Medicare and Medicaid Anti-Kickback Statute which is set forth in 42 U.S.C. § 1320a-7b(b)(3)(B), and (b) the bona fide employment relationship exception to the Physician Self-Referral Statute which is set forth in 42 U.S.C. § 1395nn(e)(2) and the corresponding regulations.  This Agreement shall be construed consistent with compliance with such statutes and regulations.  The payments to the Physician hereunder are fair market value for the services rendered based upon arm's length bargaining and the value of similar services in the community.    Such payments are intended solely as compensation for the medical services personally performed by the Physician under this Agreement.

8.13    **Entire Agreement**.    This Agreement supersedes all prior negotiations and agreements between the parties hereto relative to the transaction contemplated by this Agreement, which contains the entire understanding of the parties hereto.  This Agreement may only be modified or amended by a writing signed by both Hospital and Physician; provided that if Hospital deems modification necessary to comply with the Internal Revenue Service requirements, the Medicare/Medicaid Anti-Kickback Statute, 42 U.S.C. 13201-7b, the Physician Self-Referral Statute, 42 U.S.C. 1395nn, or other applicable laws or regulations, Hospital may modify this Agreement, but only to the extent necessary to comply with such law or regulation.

8.14    **Advice of Counsel**.  Physician has been advised that Physician has the right to legal counsel and tax and financial advice in the review of this Agreement on Physician's behalf and acknowledges that Physician has taken advantage of that right.  By Physician's signature below, Physician fully and freely accepts the rights, duties, and responsibilities of Physician as described herein. Physician acknowledges and agrees that Physician has not and will not rely on any advice furnished by any representative of Hospital concerning any federal, state, or local tax implication of this Agreement and/or Physician's employment with Hospital.

8.15    **Attorneys' Fees**.  The prevailing party in any action brought to enforce the terms of this Agreement shall be entitled to recover from the other party to such action the prevailing

OP 1854147.5

party's reasonable attorneys' fees and expenses incurred in enforcing the terms of this Agreement.

8.16 **Disputes**.    Should a dispute or conflict arise between the parties related to this Agreement, Physician and Hospital's CEO will meet and confer regarding the matter.  If the matter is not resolved, it shall be heard by the Board of Trustees of Hospital at its next regular meeting.  If the matter is not resolved by action or decision of the Board, the parties will engage in non-binding mediation through the American Health Lawyers Dispute Resolution Service or such other mediation service as mutually agreed by the parties.  The parties will share in the cost of the mediation.

8.17 **Headings**.    The headings and other captions in this Agreement are for convenience and reference only and shall not be used in interpreting, construing, or enforcing any of the provisions of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date first above written.

"Hospital"
**Norton County Hospital**

By: _____
Gina Frack
Title:  Chief Executive Officer
Date: _August 16, 2019_____

"Physician"

**Joshua Gaede, M.D.**

_____
Date: _08/12/2019_____

14

OP 1854147.5

## CERTIFICATE OF SECRETARY

I, _Jill Edgett_, Secretary of the Board of Trustees of Norton County Hospital, hereby certify that this Physician Employment Agreement was approved by the Board of Trustees, at its regular meeting held on the _16_ day of _August_, 201_9_.

_Jill Edgett_
Secretary

15

### Schedule 3.1(c)

**to Physician Employment Agreement By and Between
Norton County Hospital and
Joshua Gaede, M.D., Dated August 16, 2019**

### Administrative Duties

**[To be determined, if any, by agreement of the parties.]**

16

**EXHIBIT A**

**to Physician Employment Agreement By and Between**
**Norton County Hospital and**
**Joshua Gaede, M.D., Dated** _August 16_ **, 2019**

**COMPENSATION**

1. **Definitions.**

   1.1   <u>Work Relative Value Units ("Work RVU")</u>.  That portion of the resources used in a procedure that reflects a provider's time and intensity in furnishing such procedure, as defined in 42 U.S.C. § 1395w-4(c)(2)(C)(i) and set out in Medicare Physician Fee Schedule Final Rule (MPFS Final Rule) immediately preceding the Contract Year for which payment is being made; provided, however, if the MPFS Final Rule does not assign a Work RVU for a particular procedure or service, Hospital will assign a Work RVU to such procedure or service and provide Physician with written notice of such Work RVU.

   1.2   <u>Production</u>.  Physician's total Work RVUs for a specified time period for all patient care services provided on behalf of Hospital as described in Section 3.1 of the Agreement (excluding Physician's Work RVUs attributable to any designated health service (as such term is defined under 42 U.S.C. 1395nn and 42 C.F.R. 411.351, as now in effect or as subsequently amended), except for the professional component of a designated health service personally performed by Physician).  Physician's Production shall be calculated based on complete and accurate billing records actually submitted by Physician to Hospital during the specified period in the manner specified by Hospital.

2. **Compensation.**

   2.1   <u>Base Salary</u>.   For the initial three (3) years of the Agreement, for all services described in Section 3.1(a), (b), and (d) rendered by Physician hereunder, Hospital shall pay Physician the gross amount of _Three Hundred Eighty-Five Thousand Dollars_ ($385,000.00) annually as Physician's base compensation ("**Base Compensation**") payable in accordance with Hospital's payroll policies. Prior to the fourth (4th) year of the Agreement, Physician and Hospital will negotiate a new Base Compensation amount, which amount shall be a percentage of Physician's total actual compensation for the preceding year.

   2.2   <u>Productivity Bonus</u>.  For all services described in Section 3.1(a), (b), and (d) rendered by Physician hereunder, in addition to the Base Salary, Physician shall be eligible for a Productivity Bonus based on Physician's annualized Production calculated in the following manner:

   $61.06 per Work RVU ("**Conversion Factor**") for Work RVUs (Production) in excess of 6,305 ("**Threshold**")

OP 1854147.5

Hospital shall calculate the Productivity Bonus annually by multiplying Physician's Production in excess of the Threshold for the calendar year by the Conversion Factor and pay that amount to Physician as the Productivity Bonus (less applicable withholdings). The Threshold amount will be adjusted for the fourth year of employment as appropriate in light of the new Base Compensation for that year.

The amount of Productivity Bonus determined to be owing to Physician in any year shall be reduced by the amount of any denial of payment, or refund, offset, or recoupment of payment already received by Hospital in that year, which Hospital reasonably determines resulted from Physician's failure to timely and accurately complete Medical Records (including Billing Information). Any such Productivity Bonus shall be paid to Physician by Hospital by no later than the 30th day after the end of the year for which the Productivity Bonus is calculated.

2.3    No Overtime. The parties acknowledge that pursuant to 29 C.F.R. 541.600(e), Hospital is not obligated to pay Physician overtime pay for hours worked beyond forty (40) hours per week.

OP 1854147.5

**EXHIBIT B**

**to Physician Employment Agreement By and Between
Norton County Hospital and
Joshua Gaede, M.D., Dated** *August 16,* **201*9***

**BENEFITS**

Physician shall be eligible for such standard employee benefits as provided to Hospital physician employees generally ("**Benefits Policy**"). Physician shall also be entitled to the benefits described in this Exhibit B. In the case of any conflict between the Benefits Policy and this Exhibit B, Exhibit B shall prevail.

1. **Paid Time Off ("PTO").** Physician shall be entitled to twenty (20) days of PTO annually. PTO includes vacation, sick leave, and holidays. Physician may carry over a maximum of ten (10) unused PTO days to the following year.

2. **Signing Bonus.** Hospital shall provide Physician a signing bonus ("**Signing Bonus**") with initial payment in the amount of *Forty Thousand Dollars* ($40,000.00) payable upon signing of this Agreement, plus a stipend payable thereafter in installments of *Three Thousand Dollars* ($3,000.00) each month through July 2020 **(less all withholding by Hospital as required by federal and state tax laws and Social Security and Medicare tax withholding as required by law). Physician acknowledges the Signing Bonus represents taxable income to Physician in the year in which it is paid to Physician by Hospital and that Physician solely is responsible for payment of any federal, state, or local taxes or assessments on such income and that withholdings for such federal, state, and local taxes, and other withholdings as required by law will be reflected on Physician's W-2.**

   Notwithstanding any other provision of this Agreement, if this Agreement is terminated prior to Physician commencing employment and completing four (4) years of employment (for reasons other than death, disability, termination by Physician for cause, as finally determined by a court of competent jurisdiction, or termination by Hospital without cause), Physician shall pay Hospital, as liquidated damages, the amount of the Signing Bonus that Physician received ("**Signing Bonus Liquidated Damages**") within ten (10) days of such termination. Provided, however, the amount of Signing Bonus Liquidated Damages that Physician is obligated to repay shall be reduced by 1/48 for each month that Physician is a full-time employee of Hospital.

3. **Relocation Expenses.** Hospital shall pay the expenses actually incurred by Physician in moving Physician's personal effects and household furnishings from Physician's current residence to the community where Physician will practice on behalf of Hospital, up to a maximum of *Ten Thousand Dollars* ($10,000.00) ("**Relocation Allowance**"). Hospital shall not pay for or reimburse any such expense unless (a) the expense is of the type excludable from Physician's income under Section 217 of the Internal Revenue Code; and (b) Physician presents adequate documentation of such expense. In addition, Hospital will reimburse Physician's reasonable travel costs for up to three (3) house-

19

hunting trips. Reimbursement for these expenses shall be subject to applicable IRS rules regarding taxable income, and any tax liability shall be Physician's responsibility.

4.  **Continuing Medical Education ("CME").** Upon presentation to Hospital of sufficient and appropriate documentation of expenses, Physician shall be entitled to reimbursement of CME expenses up to a maximum of *Five Thousand Dollars* ($5,000.00). Physician shall be entitled to five (5) days of paid time for CME (in addition to PTO).

5.  **Malpractice Insurance.** At all times during the Term of this Agreement, Hospital shall provide medical professional liability insurance covering Physician in the amounts designated by Hospital's Board of Trustees, which amounts shall be at least *One Million Dollars* ($1,000,000) per occurrence and *Three Million Dollars* ($3,000,000) in annual aggregate. Upon Physician's termination of employment with Hospital for any reason, Medical Center shall cease providing such insurance coverage, and any refunds of premiums under such medical malpractice insurance policy, or under the Kansas Healthcare Stabilization Fund, shall be the property of Hospital, and Physician agrees to execute any consents, releases, or other documents necessary for Hospital to secure such refunds. Physician hereby makes, constitutes, and appoints Hospital as Physician's true and lawful attorney in fact in Physician's name, place, and stead to execute such documents and instruments as are necessary to carry out this provision. This Power of Attorney herein granted shall be deemed to be irrevocable and coupled with an interest. Notwithstanding the foregoing, Physician shall bear the cost of any necessary "tail coverage" for Physician upon termination of this Agreement if such termination occurs during before the fourth anniversary of the Effective Date, regardless of the reason for such termination. Hospital shall bear the cost of such tail coverage upon termination of this Agreement any time after the fourth anniversary of the Effective Date.

6.  **Professional Expenses.** Hospital will reimburse Physician for the cost of Kansas state medical licensure, credentialing, professional certifications (including board certification), other certifications required by Hospital (e.g., ATLS, PALS, NRP, etc.), and a subscription to UpToDate or a similar resource. Hospital will reimburse Physician for up to *One Thousand Five Hundred Dollars* ($1,500.00) for professional dues, journals, books, and subscriptions (pro-rated for year one).

7.  **Student Loan Repayment Stipends.** Hospital shall make four (4) payments to Physician of *Thirty Thousand Dollars* ($30,000.00) each **(less all withholding by Hospital as required by federal and state tax laws and Social Security and Medicare tax withholding as required by law)** as Student Loan Repayment Stipends (each, a "**Stipend**"). Physician shall use each Stipend solely for the purpose of making payment to the lenders of Physician's education-related loans, and shall provide in a timely manner documentation of each such payment to Hospital. The First Stipend shall be paid to Physician on the Commencement Date, the Second Stipend shall be paid to Physician on the first anniversary of the Commencement Date, the Third Stipend shall be paid to Physician on the second anniversary of the Commencement Date, and the Fourth Stipend shall be paid to Physician on the third anniversary of the Commencement Date. Hospital's obligation to pay each Stipend to Physician is expressly contingent upon

OP 1854147.5

Physician's continued employment by Hospital. Hospital shall have no obligation to pay a Stipend if one party delivers to the other party advance written notice of termination without cause pursuant to Section 6.2 of this Agreement prior to the date on which the Stipend is due to be paid. Hospital's obligation to pay each Stipend is personal to Physician and may not be assigned to Physician's lenders or any other party and is not intended to create any rights in Physician's lenders as third-party beneficiaries or otherwise.

(a)     Notwithstanding any other provision of this Agreement, if Physician does not remain a full-time employee of Hospital continually for twelve (12) months following the Commencement Date (for reasons other than death, disability, termination by Physician for cause, or termination by Hospital without cause), Physician shall repay to Hospital as liquidated damages *Thirty Thousand Dollars* ($30,000.00); provided, however, the amount owing by Physician shall be reduced by *Two Thousand Five Hundred Dollars* ($2,500.00) for each month Physician remained a full-time employee of Hospital following the Commencement Date. Physician shall make such payment to Hospital within thirty (30) days of Physician's termination of employment, as applicable. Physician hereby authorizes Hospital to withhold from any amount owing to Physician by Hospital pursuant to this Section 6(a).

(b)     Notwithstanding any other provision of this Agreement, if Physician remains a full-time employee of Hospital continually for at least twelve (12) months, but less than for twenty-four (24) months, following the Commencement Date (for reasons other than death, disability, termination by Physician for cause, or termination by Hospital without cause), Physician shall repay to Hospital as liquidated damages *Thirty Thousand Dollars* ($30,000.00); provided, however, the amount owing by Physician shall be reduced by *Two Thousand Five Hundred Dollars* ($2,500.00) for each month Physician remained a full-time employee of Hospital following the first anniversary of the Commencement Date. Physician shall make such payment to Hospital within thirty (30) days of Physician's termination of employment, as applicable. Physician hereby authorizes Hospital to withhold from any amount owing to Physician by Hospital pursuant to this Section 6(b).

(c)     Notwithstanding any other provision of this Agreement, if Physician remains a full-time employee of Hospital continually for at least twenty-four (24) months, but less than thirty-six (36) months, following the Commencement Date (for reasons other than death, disability, termination by Physician for cause, or termination by Hospital without cause), Physician shall repay to Hospital as liquidated damages *Thirty Thousand Dollars* ($30,000.00); provided, however, the amount owing by Physician shall be reduced by *Two Thousand Five Hundred Dollars* ($2,500.00) for each month Physician remained a full-time employee of Hospital following the second anniversary of the Commencement Date. Physician shall make such payment to Hospital within thirty (30) days of Physician's termination of employment, as applicable. Physician hereby

OP 1854147.5

authorizes Hospital to withhold from any amount owing to Physician by Hospital pursuant to this Section 6(c).

(d)    Notwithstanding any other provision of this Agreement, if Physician remains a full-time employee of Hospital continually for at least thirty-six (36) months, but less than forty-eight (48) months, following the Commencement Date (for reasons other than death, disability, termination by Physician for cause, or termination by Hospital without cause), Physician shall repay to Hospital as liquidated damages *Thirty Thousand Dollars* ($30,000.00); provided, however, the amount owing by Physician shall be reduced by *Two Thousand Five Hundred Dollars* ($2,500.00) for each month Physician remained a full-time employee of Hospital following the third anniversary of the Commencement Date.    Physician shall make such payment to Hospital within thirty (30) days of Physician's termination of employment, as applicable.    Physician hereby authorizes Hospital to withhold from any amount owing to Physician by Hospital pursuant to this Section 6(d).

(e)    Physician acknowledges the each Stipend represents taxable income to Physician in the year in which it is paid to Physician by Hospital and that Physician is solely is responsible for payment of any federal, state, or local taxes or assessments on such income and that withholdings for such federal, state, and local taxes, and other withholdings as required by law will be reflected on Physician's W-2.

8.    **Loan Refinancing.**    Within thirty (30) days following the Commencement Date, Hospital will refinance Physician's loan (current balance of approximately $93,704.57 with refinancing to be at the then-existing balance, but in any event not in excess of $93,704.57) the funds for which Physician has used to repay Physician's obligation to Sheridan County Hospital ("**Sheridan Loan**").    The refinanced loan from Hospital to Physician ("**Loan**") shall be evidenced by a Promissory Note substantially in the form attached hereto as Exhibit C, which shall be signed by Physician and delivered to Hospital in conjunction with and as a prerequisite to Hospital's closing on refinancing of the Sheridan Loan.

(a)    So long as Physician remains in compliance with the terms of this Agreement and the Promissory Note, no interest will accrue on the Loan.    If Physician breaches the Agreement or defaults on the Promissory Note, the Promissory Note shall bear interest at a rate equal to the Prime Rate as published in *The Wall Street Journal* on the Commencement Date, on the unpaid balance.    Principal (and interest, if applicable) on the Promissory Note shall be paid in ninety-six (96) consecutive monthly installments, with the first installment due on the last day of the month following the Commencement Date.    **Provided, however, for each month Physician maintains a full-time medical practice in the Service Area following the Commencement Date, Hospital shall forgive the installment due from the Physician at the end of such month, so that all amounts owing Hospital on that Promissory Note shall be forgiven, if all of the above conditions are satisfied, by the eighth anniversary of the Commencement Date.**

OP 1854147.5

(b)     Physician acknowledges and agrees that any amount owing by Physician forgiven by Hospital pursuant to Section (a) above shall constitute income for Physician, and any compensation paid to Physician by Hospital at the time of such forgiveness shall reflect all applicable federal and state tax, Medicare, and Social Security withholdings by Hospital on such income as required by law.

OP 1854147.5