IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRIAN KIRK | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | No. 24-2405-KHV |
| NORTON COUNTY HOSPITAL | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

On September 6, 2024, Brian Kirk filed suit against his former employer, Norton County Hospital ("NCH"), alleging retaliation in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729. This matter comes before the Court on Defendant's Motion And Brief In Support Of Summary Judgment (Doc. #71) filed November 7, 2025. For reasons stated below, the Court overrules defendant's motion.

**Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets

this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment. Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018). The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative. Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

**Factual Background**

Highly summarized, the following facts are undisputed or, where disputed, viewed in the light most favorable to plaintiff, the non-movant.

NCH is a remote, 25-bed critical access county hospital in Norton, Kansas, governed by a Board of Trustees and staffed by 140 employees. NCH has had difficulty retaining and attracting quality employees due to its rural location. In 2019, before plaintiff's employment, NCH hired three physicians who were fresh from medical school. NCH hoped they would stay with NCH and raise their families in Norton.

On a date which the parties do not specify, NCH hired plaintiff as Chief Executive Officer

-2-

("CEO"). At some point, plaintiff discovered that NCH was paying the three physicians more than fair market value, that the physicians were less productive than average and that patients were complaining of long wait times to schedule appointments. Plaintiff called out these issues and sought to renegotiate the physician contracts.

Over the course of plaintiff's employment, he had conflict with multiple employees, including President Jill Edgett and the physicians. Multiple employees resigned. On numerous occasions, plaintiff shared confidential hospital information with his wife and forwarded it to his private Hotmail account. A vocal group in the Norton County community did not want plaintiff to continue as CEO. On September 30, 2022, Chief Information Officer ("CIO") Klare Bliss filed a grievance against plaintiff, suggesting that he needed Executive Leadership Coaching.

On October 5, 2022, plaintiff raised concerns that the hospital was violating the Stark Law, 42 U.S.C. § 1395nn, which prohibits a physician from referring Medicare patients for designated health services to an entity which the physician has a financial relationship. Plaintiff reported these concerns to the Board—including that NCH was paying the physicians over fair market value. In November of 2022, the Board sent plaintiff to a leadership training course.

On December 5, 2022, the three physicians and another NCH doctor, Dakota Dreher, filed an employee grievance against plaintiff, alleging religious discrimination, gender discrimination and breach of contract. They also disputed their clinic visit counts and plaintiff's termination of Clinic Manager Avery Aiken. The Board investigated and found that plaintiff "either followed Hospital policy or acted with full authority of the Board." On December 8, 2022, Clinic Director Aiken emailed a grievance to the Board outlining "a handful of the scenarios that have occurred with just me since [plaintiff] has arrived" in which plaintiff was "[s]preading lies and speaking negatively about myself and my position."

On December 15, 2022, plaintiff sent another letter to the Board expressing several concerns including "Possible Stark Fraud and Abuse concerns" related to overpaying physicians. From December 15, 2022 to January 4, 2023, the Board placed plaintiff on administrative leave. In April of 2023, the Board gave plaintiff a performance score of 33.87 out of 80 (42 per cent).[1] On May 16, 2023, plaintiff sent the Board a final letter which reiterated his belief that NCH was in violation of the Stark Law. On May 17, 2023, the Board formally voted to end plaintiff's employment.

## Analysis

Plaintiff asserts that defendant terminated his employment in violation of the anti-retaliation provision of the FCA, 31 U.S.C. § 3739(h). Defendant seeks summary judgment, arguing that (1) plaintiff cannot show that defendant had notice of FCA-related protected activity and (2) defendant properly terminated plaintiff's employment based on many legitimate, nonretaliatory business reasons.

FCA whistleblower protections "prohibit retaliation against an employee who reports that his employer had knowingly presented false or fraudulent claims to the federal government for payment or approval." Cash v. Lockheed Martin Corp., 684 F. App'x 755, 764 (10th Cir. 2017). A whistleblower who lacks direct evidence of retaliation may rely on circumstantial evidence under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas test, plaintiff must first make a prima facie case of retaliation. The burden then "shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action." Miller v. Inst. for Def. Analyses, 795 F. App'x 590, 595 (10th Cir. 2019)

---

[1] In his first review, which occurred six months after he joined NCH, the Board gave plaintiff a performance score of 65.07 out of 80, or 81 per cent.

(quoting Harrington v. Aggregate Indus.-Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012)).  If the employer shows evidence of "a legitimate nonretaliatory reason, the plaintiff must assume the further burden of showing that the proffered reason is a pretext calculated to mask retaliation."  Id.

To establish a prima facie FCA whistleblower claim, plaintiff must show that "(1) he engaged in a protected activity; (2) defendant was on notice of that protected activity; and (3) defendant retaliated against plaintiff because of his protected activity."  Kirk v. Norton Cnty. Hosp., 765 F. Supp. 3d 1204, 1210 (D. Kan. 2025) (citing United States ex rel. Reed v. KeyPoint Gov't Sols., 923 F.3d 729, 764 (10th Cir. 2019)).  Defendant argues that plaintiff cannot establish the second element—that he placed defendant on notice of protected activity—because he did not report or indicate to the Board that he would report possible Stark Law violations to an outside agency.  Plaintiff responds that the FCA does not require him to report or express intent to report to an outside agency, and that he adequately placed defendant on notice of his attempts to stop potential Stark Law violations, which is protected activity.

Notice does not require "magic words."  Barrick v. Parker-Migliorini Int'l, LLC, 79 F.4th 1262, 1272 (10th Cir. 2023).  The protected activity must have a nexus to the FCA.  Id. at 1271.  To establish notice, plaintiff's actions must convey to defendant that he was attempting to stop it from engaging in fraudulent activity.  Id.  Defendant does not need to know that its activity violates the FCA specifically, and plaintiff does not need to have furthered a qui tam action.  Id.  The standard to establish notice is higher for individuals whose job entails the investigation of fraud— to overcome the presumption that they are merely acting in accordance with their employment obligations, they must make clear their intentions of bringing or assisting in an FCA action.  U.S. ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1523 (10th Cir. 1996).

Viewed in the light most favorable to plaintiff, the record does not reflect that plaintiff's

job specifically entailed the investigation of fraud, and he put defendant on notice that he was attempting to stop it from engaging in potentially fraudulent activity when (1) in April of 2022, he discovered that defendant was paying at least three doctor salaries above fair market, provided data to the Board that two advanced practice providers saw more patients than the three doctors combined and proposed that NCH review and revise the physicians' employment agreements; (2) on October 5, 2022, he submitted an employee grievance report to the Board which underlined his continued concern about NCH's potential Stark Law violations; (3) on December 15, 2022, he submitted a second letter to the Board requesting its support to ensure that compensation levels and other revenues paid to the doctors complied with the Stark Law; and (4) on May 16, 2023, he reminded NCH of the compliance risks related to Stark Law violations. Thus, for the purposes of summary judgment, plaintiff has established a prima facie FCA whistleblower claim.

As to causation, to satisfy the third element of his prima facie case, plaintiff must show that his protected activity was a *but-for* cause of the retaliation, but he need not show that it was the *sole* cause. Barrick, 79 F.4th at 1276–77. Plaintiff must show that but-for his engagement in protected activity, his employer would not have retaliated against him. Id. at 1277. Courts may infer a causal connection where protected activity is closely followed by the adverse action. See Miller v. Inst. for Def. Analyses, 795 F. App'x 590, 596 (10th Cir. 2019). The Tenth Circuit has held that one and one-half months between protected activity and adverse action may, by itself, establish causation, but a three month period, standing alone, is insufficient to establish causation. Foster v. Mountain Coal Co., LLC, 830 F.3d 1178, 1191 (10th Cir. 2016).

Here, even if defendant had some non-retaliatory reasons for terminating plaintiff's employment, the jury could still find that retaliation was a but-for cause of the termination. As to timing, the uncontested record reflects that (1) on October 5, 2022, plaintiff raised concerns that

the hospital was violating the Stark Law, and *less than one month later*, the Board sent him to a leadership training course, (2) on December 15, 2022, plaintiff sent another letter to the Board expressing several concerns including "Possible Stark Fraud and Abuse concerns" related to overpaying physicians, and *beginning that same day* (and continuing until January 4, 2023), the Board placed him on administrative leave and (3) on May 16, 2023, plaintiff sent the Board a final letter in which he reiterated his belief that NCH was violating the Stark Law, and *the next day*, the Board formally voted to end his employment. Thus, plaintiff has established an inference of causation based on timing.

Defendant argues that it terminated plaintiff's employment for legitimate non-retaliatory business reasons which plaintiff cannot show are pretextual. Specifically, defendant argues that it terminated plaintiff's employment because (1) he clashed with many NCH employees, especially female employees, (2) he could not get along with President Jill Edgett, his direct Board contact, (3) he had conflict with NCH physicians, especially female physicians, (4) a vocal group from the Norton County community did not want him to continue as CEO, (5) he demonstrated poor job performance as evidenced by his Acumen training and below-average performance evaluations, (6) NCH had a mass employee exodus under his leadership, (7) the Board authorized him to offer the three physicians new employment agreements, but he failed to do so because he wanted to re-negotiate the contracts, (8) he breached his confidentiality agreement with NCH by improperly sharing confidential information outside the hospital and (9) the Board and legal counsel assessed and took seriously his Stark Law claims and determined that they were unfounded.

Fairly viewed in light of the relevant summary judgment standards, the record reveals critical issues of material fact whether defendant's articulated reasons for terminating plaintiff's employment were pretextual. Stated most generally, these issues include (1) whether Ms. Edgett,

-8-

the Board president, harassed, threatened and turned people against plaintiff because he engaged in protected activity, (2) whether plaintiff's conflict with the physicians was due to his attempts to lower their salaries to comply with the Stark Law, (3) whether employees resigned due to plaintiff's leadership, (4) whether plaintiff's performance was poor and (5) whether plaintiff's protected activity was a "but-for" factor in defendant's decision to terminate his employment.

**IT IS THEREFORE ORDERED** that Defendant's Motion And Brief In Support Of Summary Judgment (Doc. #71) filed November 7, 2025 is **OVERRULED**.

Dated this 7th day of January, 2026 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge